# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

TONYA EVETTE RHODES,
    Appellant,

    v.

DEPARTMENT OF VETERANS
 AFFAIRS,
    Agency.

DOCKET NUMBER
AT-0752-12-0316-X-1

DATE: September 25, 2015

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>Tonya Evette Rhodes</u>, Brandon, Florida, pro se.

<u>W. Cheryl Griffith</u>, Esquire, St. Petersburg, Florida, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### ORDER

¶1   The administrative judge issued a compliance initial decision finding the agency noncompliant with the March 15, 2013 initial decision in the underlying removal appeal. MSPB Docket No. AT-0752-12-0316-C-1, Compliance File (CF), Tab 11, Compliance Initial Decision (CID). On April 13, 2015, we issued a

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

nonprecedential order finding the agency in partial compliance. *Rhodes v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-12-0316-X-1, Order (Apr. 13, 2015); Compliance Referral File (CRF), Tab 5. For the reasons discussed below, we again find the agency in partial compliance and order it to take appropriate action to bring itself into full compliance.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2 On March 15, 2013, the administrative judge issued an initial decision reversing the appellant's removal and requiring the agency to restore her effective February 15, 2012. MSPB Docket No. AT-0752-12-0316-I-1, Initial Appeal File (IAF), Tab 47, Initial Decision at 16. The decision required the agency to pay her appropriate back pay and benefits. *Id.* Neither party filed a petition for review, and the initial decision became the final decision of the Board.

¶3 On July 30, 2013, the appellant filed a petition for enforcement. She contended that the agency: failed to pay her the correct amount of back pay, with interest; erroneously generated an overpayment notice relating to her Federal Employee Health Benefit (FEHB) premiums, causing the agency to attempt to collect a nonexistent debt; failed to make the required 1% Thrift Savings Plan (TSP) contributions; and failed to withhold money from her back pay for Federal Employee Group Life Insurance (FEGLI) premiums. CF, Tab 1 at 3-4, Tab 10 at 4, 7.

¶4 On December 10, 2013, the administrative judge issued a compliance initial decision finding the agency noncompliant with the March 15, 2013 initial decision. CID. The administrative judge determined that the agency failed adequately to explain its back pay calculations, including how it calculated the back pay period and interest amounts. CID at 3. The administrative judge further found that the agency failed to provide evidence to show that it made appropriate transfers to the appellant's TSP account and FEGLI. *Id.* Finally, the administrative judge found that the agency admitted it may have erroneously

submitted a debt notice to the Office of Personnel Management (OPM) regarding the appellant's FEHB plan and had not provided evidence that it corrected such error. *Id.* Neither party filed a petition for review.

¶5 On January 13, 2014, the agency filed evidence of purported compliance, to which the appellant responded on January 31, 2014.[2] CRF, Tabs 1, 3. On April 13, 2015, the Board issued a nonprecedential order finding the agency in partial compliance and ordering it, in pertinent part, to take the following steps to bring itself into full compliance:

1. Submit a narrative explanation regarding the appellant's entitlement to a within-grade increase (WIGI) and overtime pay during the back pay period. Submit evidence that the agency paid any amounts owing, with interest.

2. Submit a narrative explanation regarding whether the agency withheld optional FEGLI contributions from the appellant's back pay, and how much. If necessary, submit evidence that the agency refunded any amounts withheld, plus interest.

3. Submit a narrative explanation regarding how the agency calculated its 1% TSP contributions, accounting for any amounts owed for a WIGI and overtime. Provide evidence that the agency deposited the appropriate amounts in the appellant's TSP fund.

4. Submit evidence that the agency provided the appellant any applicable notice and opportunity to request waiver of the debts arising from the annual leave and employee retirement contribution overpayments.

---

[2] Following these submissions, the case was referred to an Office of General Counsel (OGC) attorney for attempted settlement. In February 2015, after the parties failed to reach agreement, the case was transferred to a different OGC attorney for a recommended disposition on the merits. The parties did not submit any further documents into the record during settlement discussions.

> 5. Submit evidence that the agency refunded any amounts owed, with interest, for the FEHB debt.

*Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 10-11; CRF, Tab 5 at 10-11.

¶6 Following this order, both parties filed submissions. CRF, Tabs 7, 9-10. For the reasons explained below, we again find the agency in partial compliance and order it to submit evidence of full compliance.

## ANALYSIS

¶7 When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation she would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Back Pay and Interest

¶8 The administrative judge ordered the agency to clearly set forth the back pay and interest amounts due, including how the amounts were calculated and the amount and reason for all deductions. The agency also was required to provide proof of payment and to explain any discrepancies between its calculations and the amounts shown on the appellant's Leave and Earning statements. CID at 3-4. In our April 13, 2015 order, we found the agency compliant on this issue except concerning whether the agency accounted for the appellant's alleged entitlements to a WIGI and 20 hours per month mandatory overtime during the back pay

period and concerning whether the agency properly withheld amounts relating to the appellant's FEGLI, TSP, and FEHB. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 5; CRF, Tab 5 at 5.

¶9      In its May 1, 2015 response, the agency asserted that the appellant was not entitled to a WIGI during the back pay period (February 15 to March 30, 2012) because she received a step increase on August 28, 2011, to GS-12 step 4, and was required to wait 2 years to be eligible for another increase. CRF, Tab 7 at 4. The appellant did not contest this assertion. Accordingly, we find the agency in compliance on this issue.

¶10      As to the overtime issue, the agency asserted that it determined that the appellant was entitled to 30 hours of overtime pay during the back pay period. *Id*. The agency calculated this amount as $1,632.30 (gross) and provided evidence that it had paid this amount, less taxes and deductions, on April 19, 2014. *Id*. at 4-5, 19. The agency stated that it had not paid interest on this amount but had requested that the Defense Finance and Accounting Services (DFAS) calculate and pay the interest. *Id*. at 5. The appellant did not contest these assertions. CRF, Tab 10 at 4. Accordingly, we find the agency in compliance on this issue, with the exception of the interest payment. The agency must submit evidence that it paid the required interest.

¶11      The appellant contended that the agency was not in compliance with its back pay obligations because it did not properly credit her annual leave or permit her to "cash in" her leave. *Id.* It is unclear how these allegations relate to the agency's back pay obligations. Regardless, we found in our previous order that the agency was in compliance with its back pay obligations except for the WIGI and overtime issues discussed above and the withholding issues (FEGLI, TSP, and FEHB) discussed below. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 5; CRF, Tab 5 at 5. We therefore will not consider the appellant's new claims regarding her back pay.

### Federal Employees Group Life Insurance

¶12 The administrative judge ordered the agency to provide evidence that it transferred money withheld from the appellant's back pay for FEGLI to the appropriate entity. CID at 4. In its January 13, 2014 submission, the agency asserted that OPM's back pay regulations do not permit employee or agency contributions for life insurance coverage to be deposited in the fund unless the employee "dies during the intervening period or suffered dismemberment entitling [her to] benefits" during the back pay period. CRF, Tab 1 at 9. In our April 13, 2015 order, we determined that the agency's position was supported by 5 C.F.R. § 870.404(e) and appeared to apply to both basic and optional FEGLI contributions. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 5-6; CRF, Tab 5 at 5-6. We noted, however, that it appeared the agency nonetheless had withheld an optional FEGLI contribution of $48.36 from the appellant's back pay. We ordered the agency to explain whether it had withheld this contribution and, if it determined that this contribution was improperly withheld, to refund it with interest. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 10; CRF, Tab 5 at 10.

¶13 The agency conceded that it withheld this amount, but stated that it was unsure whether this withholding was correct and had submitted a "remedy ticket." CRF, Tab 7 at 5. Because the agency has not submitted the information required by our prior order, we find the agency noncompliant on this issue.

### Thrift Savings Plan

¶14 The agency acknowledged that it failed to contribute an amount equal to 1% of the appellant's salary to her TSP account for each pay period during the back pay period. CRF, Tab 1 at 6. Instead, the agency mailed the appellant a check for an amount equal to the 1% contribution during the four pay periods at issue ($92.86). *Id.* In our April 13, 2015 order, we found the agency noncompliant both as to calculating the 1% contribution, and as to depositing the appropriate

amounts into the appellant's TSP account. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 7-8; CRF, Tab 5 at 7-8. We ordered the agency to explain its calculations and provide evidence that it deposited the appropriate amounts into the appellant's TSP account. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 11; CRF, Tab 5 at 11.

¶15    The agency subsequently explained that it calculated the 1% TSP contribution based on 1% of the appellant's basic pay, in accordance with guidance provided by the TSP. CRF, Tab 7 at 5, 34, 36. The agency stated that it had submitted a remedy ticket for this amount to be deposited in the appellant's TSP fund. *Id*. at 6. The agency also stated that it intended to recoup the $92.86 it previously paid to the appellant in error (when it paid the appellant directly instead of depositing this amount in her TSP account). *Id*.

¶16    The appellant contended that the agency should not be permitted to recoup the $92.86 paid in error because "allowing [her] to incur a debt due to internal miscalculation and training errors are [sic] mean-spirited and does not place appellant in a positive position." CRF, Tab 10 at 5. We disagree. The agency paid this amount in error and is permitted to recoup it. The appellant is not entitled to a windfall. The agency must, however, provide evidence that it deposited this amount into the appellant's TSP account and that her TSP account has been credited with the appropriate breakage.

Debt Notices

1. *Annual Leave Debt*

¶17    In its January 13, 2014 submission, the agency explained that it erroneously paid the appellant for the 187.5 hours of annual leave she had accrued at the time of her removal. The payment was erroneous because the agency already had paid the appellant for this leave when it removed her. CRF, Tab 1 at 5. The second payment resulted in a debt of $6,800.63 (gross). *Id*. at 9. The agency maintained that this debt was valid. *Id*. In our April 13, 2015 order, we found that the

agency satisfactorily explained the origin of this debt, but failed to submit evidence that it provided the appellant any applicable notice and opportunity to request waiver of this debt mandated by her collective bargaining agreement. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 9, 11; CRF, Tab 5 at 9, 11.

¶18    The agency subsequently submitted evidence that it had twice advised the appellant that she could request waiver of this debt.  CRF, Tab 7, 47, 50.  The appellant did not challenge this evidence.  Instead, she stated that she did not request waiver of the debt because she did not believe she should owe any money.  CRF, Tab 10 at 5.  As we previously found, however, this debt appears accurate. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 9; CRF, Tab 5 at 9. Because the agency has provided the required waiver notice, we find it in compliance on this issue.

2.  *Retirement Contributions Debt*

¶19    In our prior order, we found that the agency satisfactorily explained that the appellant owed a debt for employee and agency retirement contributions that the agency erroneously failed to deduct from the payment issued to the appellant on June 15, 2013 (which covered hours worked during the back pay period). *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 9; CRF, Tab 5 at 9.  As with the debt arising from double payment of the appellant's annual leave, we ordered the agency to submit evidence that it provided her any applicable notice and opportunity to request waiver of this debt mandated by her collective bargaining agreement. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 11; CRF, Tab 5 at 11.

¶20    The agency stated that it informed the appellant of the waiver procedure for the retirement contributions debt at the same time it informed her of the waiver procedure for the annual leave debt.  CRF, Tab 7 at 6.  However, the two waiver notices submitted by the agency relate only to the annual leave debt resolved above. *Id.* at 47, 50.  We therefore find the agency noncompliant on this issue.

The agency must submit evidence that it expressly notified the appellant of the amount owed for retirement contributions and that it informed her how to seek waiver of this debt.

### 3. *FEHB Premiums*

¶21　Finally, the agency explained that it erroneously charged the appellant for FEHB premiums during the back pay period and for several months afterward, creating an apparent debt of $5,160.48 gross ($198.48 per pay period x 26 pay periods). CRF, Tab 1 at 9, 65; *see* CF, Tab 8 at 7. The agency conceded this debt should not have been assessed and provided evidence that it notified OPM to cancel its attempts to collect the debt. CRF, Tab 1 at 67-69. We ordered the agency to provide evidence that (1) it paid the appellant interest on the FEHB amounts refunded for the back pay period (February 15 to March 30, 2012), and (2) it refunded and paid interest on the FEHB amounts withheld between April 1, 2012, and May 5, 2013. *Rhodes*, MSPB Docket No. AT-0752-12-0316-X-1, Order at 11; CRF, Tab 5 at 11.

¶22　Regarding the amount refunded during the back pay period ($793.92), the agency stated that it had not paid interest but had submitted a remedy ticket requesting that DFAS calculate and pay interest. CRF, Tab 7 at 6. To be deemed compliant, the agency must submit evidence that appropriate interest has been paid.

¶23　As to the amounts withheld between April 1, 2012, and May 5, 2013, the agency stated that it credited these amounts to the appellant's outstanding annual leave debt. *Id*. at 7, 74, 77. The documentation submitted by the agency does not clearly demonstrate that these amounts were credited to the appellant's debt, however. For instance, the agency's documents appear to show that the agency credited $176.91 in each pay period for 16 pay periods. *See id*. at 75. However, according to our understanding of the agency's previous explanations, the agency erroneously withheld FEHB premiums for 22 pay periods between April 1, 2012, and May 5, 2013. Moreover, the agency's previous documentation showed that

the FEHB premiums were $198.48 per pay period, not $176.91 per pay period (the amounts apparently credited to the appellant's debt). The agency must explain these discrepancies and provide a full and comprehensible accounting of how it applied these amounts to the appellant's annual leave debt.

Other Issues

¶24     The appellant appears to contend that the agency's repeated failures to provide adequate proof of compliance are in retaliation for her prior equal employment opportunity activity. CRF, Tab 10 at 6. The Board may adjudicate retaliation claims in the context of a compliance decision. *Jimenez v. U.S. Postal Service*, 58 M.S.P.R. 520, 525 (1993). Here, however, there is no indication that the agency is deliberately refusing to comply. On the contrary, the agency twice has produced evidence of partial compliance, and its failure to achieve full compliance appears to be due to the complex calculations required and its reliance on DFAS to process its requests.

¶25     The appellant requests $25,000 in compensatory damages. CRF, Tab 10 at 6. The Board lacks authority to award compensatory damages in compliance proceedings. *Cunningham v. Department of Veterans Affairs*, 91 M.S.P.R. 523, ¶ 3 (2002).

Further Actions Needed for Compliance

¶26     Within **21 calendar days** of the date of this Order, the agency shall submit the following:

1. Evidence that it paid the appropriate amount of interest on the 30 hours of overtime pay. This evidence shall include a narrative explanation of how the interest was calculated.

2. An explanation regarding whether the optional FEGLI contribution of $48.36 was properly withheld and, if it was not, evidence that this amount was refunded, with interest. The interest calculation must be supported by a narrative explanation.

3. Evidence that the agency deposited the appropriate TSP contributions into the appellant's TSP account and that the account was credited with appropriate breakage.

4. Evidence that the agency expressly notified the appellant of the amount owed for retirement contributions and her options about seeking waiver of this debt.

5. Evidence that the agency paid the appropriate amount of interest on the $793.92 refunded for FEHB premiums erroneously withheld during the back pay period. This evidence shall include a narrative explanation of how the interest was calculated.

6. A narrative explanation regarding how the FEHB premiums erroneously withheld between April 1, 2012, and May 5, 2013, were applied to the appellant's outstanding annual leave debt. This explanation must indicate, at a minimum, which pay periods were affected by the erroneous withholdings; the amount erroneously withheld in each pay period; when amounts were credited against the annual leave debt, and how much; and how much annual leave debt remains outstanding. The narrative explanation must be supported by documentary evidence.

¶27　　If the agency's submission does not fully address all the issues required, the agency shall submit **biweekly** reports detailing its progress and efforts until full compliance is achieved. If the agency fails to submit the required information or the biweekly reports, the Board may issue an order to show cause why sanctions should not be imposed against the responsible agency official pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.83(a)(2).

¶28　　The appellant shall file a response within **14 calendar days** of the agency's submission. The appellant shall file a response within **14 calendar days** to any biweekly report by the agency that contains substantive evidence of compliance (as opposed to merely a progress report). Failure to submit responses within the

required time period may cause the Board to assume the appellant is satisfied and dismiss the petition for enforcement.

FOR THE BOARD:               _____
                             William D. Spencer
                             Clerk of the Board

Washington, D.C.